# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| JAMES HAMPTON (#2007-0010001), ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 09 C 6269 |
| ) | |
| ) | |
| DR. AVERY HART, et al., ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Court Judge:

Plaintiff, James Hampton, incarcerated at the Cook County Jail, initiated this 42 U.S.C. § 1983 suit in October 2009 against Cook County Sheriff Tom Dart and Chief Medical Director of Cermak Health Services Dr. Avery Hart. Naming them in both their individual and official capacities, Plaintiff alleges that Defendants acted with deliberate indifference to his need for surgery to his Achilles tendon, which he injured in June 2007 and for which he had surgery in June 2010 while this case was pending.

Currently before the Court is a motion for summary judgment filed by Defendants. Plaintiff attempted several times to file his own motion for summary judgment but never fulfilled this Court's requirement of submitting a sufficient Statement of Material Facts. *See* N.D. Ill. Local Rule 56.1. His submissions, however, suffice as a response to Defendants' summary judgment motion. For the reasons that follow, the Court grants in part and denies in part Defendants' summary judgment motion. Plaintiff's claims against Defendants in their individual capacities are dismissed, and the claims against them in their official capacities remain.

## SUMMARY JUDGMENT STANDARD

This Court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In determining the existence of a dispute as to any material fact, this Court construes all facts in a light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255.

The party asserting that a fact is not genuinely disputed, "must support the assertion by . . . citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Rule 56(c)(1)(A). If the moving party meets his burden of showing that no dispute of material fact exists, the non-moving party must "go beyond the pleadings and affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact." *Borello v. Allison*, 446 F.3d 742, 748 (7th Cir. 2006) (internal quotation marks and citations omitted); *Celotex*, 477 U.S. at 322-26. A genuine issue of material fact is not demonstrated by the mere existence of "some alleged factual dispute between the parties," *Anderson*, 477 U.S. at 247, or by "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, a genuine issue of material fact exists only if a reasonable finder of fact could return a decision for the nonmoving party based upon the record. *See Anderson*, 477 U.S. at 252; *Insolia v. Phillip Morris Inc.*, 216 F.3d 596, 598-99 (7th Cir. 2000).

# NORTHERN DISTRICT OF ILLINOIS LOCAL RULE 56.1

When addressing a summary judgment motion, the Court derives the background facts from the parties' Local Rule 56.1 Statements, which assist the court by "organizing the evidence, identifying undisputed facts, and demonstrating precisely how each side propose[s] to prove a disputed fact with admissible evidence." *Bordelon v. Chicago Sch. Reform Bd. of Trs.*, 233 F.3d 524, 527 (7th Cir. 2000). Because Plaintiff is proceeding *pro se*, Defendants served him with a "Notice to *Pro Se* Litigant Opposing Motion for Summary Judgment" (R. 60,) which explained to Plaintiff how to respond to Defendants' summary judgment motion and Rule 56.1 Statement, as well as the consequences of failing to respond properly. *See* N.D. Ill. Local Rule 56.2.

This Court may consider a Rule 56.1 factual statement that is supported properly by the record to be true if the non-moving party either does not respond to it, offers only an evasive denial, or does not adequately cite to the record for his response. *Raymond v. Ameritech Corp.*, 442 F.3d 600, 608 (7th Cir. 2006); *Cichon v. Exelon Generation Co., L/L.C.*, 401 F.3d 803, 809-10 (7th Cir. 2005); *Brasic v. Heinemann's Inc.*, 121 F.3d 281, 284 (7th Cir. 1997); *see also* Rule 56(e).

In the present case, Defendants filed a Rule 56.1 Statement and provided notice to Plaintiff of his need to respond. (R. 59, Defs.' Rule 56.1 Statement and R. 60, Defs.' Rule 56.2 Notice to Pro Se Litigant.) Plaintiff filed an opposing motion for summary judgment and his own Rule 56.1 Statement, (R. 67-69), which the Court construes as his response to Defendants' summary judgment motion and Rule 56.1 Statement. (R. 71.) Plaintiff's Rule 56.1 Statement responds to each factual assertion in Defendants' Rule 56.1 Statement, elaborates on the factual statement with additional information, and cites to documents Plaintiff submitted as his own exhibits. (R. 69, Pl.'s Rule 56.1

Statement.) Defendants object to Plaintiff's elaboration on their Rule 56.1 statements, mainly as argumentative and nonresponsive, not providing a short statement of fact, and not properly citing the record. (R. 72.)

The Court agrees that Plaintiff should have responded to Defendants' Rule 56.1 Statement's factual assertions and then submitted additional statements, *see* Local Rule 56.1(b)(3); however, Plaintiff's responses address the subject of each of Defendants' statements and provide specific citations to documents he includes, many of which are relevant but not included by Defendants. (*See generally* R. 69.) The Court thus denies Defendants' requests to strike Plaintiff's responses. (*See* R. 72, Defs.' Response to Plaintiff's Rule 56.1 Statement.) To the extent that a response by Plaintiff is argumentative or offers only a legal conclusion, the Court will not consider the response. *See*, *e.g.*, *Greer v. Bd. of Educ.*, 267 F.3d 723, 727 (7th Cir. 2001) (self-serving legal conclusions are not statements of fact and do not suffice as a proper response to a Rule 56.1 statement).

With the above standards in mind, the Court addresses the facts of this case. The Court notes that Defendants include only one medical report with their summary judgment motion, (*see* R. 59, Exh. F, 2/4/08 report from Dr. Air Youderian, a physician at Stroger Hospital.) Most of the Court's citations to medical reports thus reference exhibits provided by Plaintiff.

## BACKGROUND

On June 19, 2007, Plaintiff was playing basketball at the Cook County Jail when he hurt his Achilles tendon. (R. 59, Defs.' Rule 56.1 Statement ¶ 7; R. 69, Pl.'s Rule 56.1 Statement ¶ 7.) According to Plaintiff, he heard a loud "popping noise," experienced excruciating pain, and told an officer, who refused to send him for medical attention. (R. 69, Pl.'s Rule 56.1 Statement ¶ 7.)[1] On

---

[1] Plaintiff previously filed a suit in May 2008 about the officer's refusal to obtain
(continued...)

June 20, 2007, Plaintiff visited Cermak Health Services, an on-site hospital for detainees at the Cook County Jail, and was treated for a sprained ankle. (R. 59 at ¶¶ 8, 10; R. 69 at ¶¶ 8, 10.) On August 6, 2007, and September 5, 2007, Physician's Assistant ("P.A.") Kevin Sims examined Plaintiff and recommended that he see an orthopedic specialist for a possible rupture to his Achilles tendon. (R. 59 at ¶ 9.) Plaintiff agrees that P.A. Sims referred Plaintiff for an examination by an orthopedist, but elaborates that there was no question at that time as to whether his tendon was ruptured. Plaintiff cites the August 6, 2007, consultation request form, wherein P.A. Sims wrote "3 months of Achilles tendon rupture" and "may need reconstruction [surgery]." (R. 69 at ¶ 9, citing Exh. E(b).)

In September 2007, an orthopedic specialist at Cermak, Dr. Alfonso Mejia, recommended that Plaintiff be seen by an outside facility for a possible rupture. (R. 59 at ¶¶ 11-12.) Plaintiff was seen at Stroger Hospital on February 4, 2008. (R. 59 at ¶ 13.) The Stroger Hospital physician assessed a "Left Achilles tendon rupture. Chronic 7 months." (R. 59, Exh. F.) After consulting with physicians at Stroger, Plaintiff opted for surgery. (R. 59 at ¶ 14.) The February 4, 2008, report states that Plaintiff was added to a "waitlist for a chronic reconstruction versus tendon transfer" surgery. (*Id.* at ¶ 18, citing Exh. F.) Plaintiff was to be "contacted when there was space available. Otherwise return to clinic on an r.p.n. basis." (*Id.*)

---

¹(...continued)
immediate medical attention following the June 19, 2007, injury. *See Hampton v. Koch*, No. 08 C 2984 ("*Hampton I*"). Plaintiff named Cook County Jail Officer Koch as Defendant and alleged that Koch acted with deliberate indifference when he rudely ignored Plaintiff's complaints about his ankle, causing him to wait until the following day to go to Cermak. The June 20, 2007, examination and x-rays at Cermak indicated only a sprain. This Court thus granted Koch's motion for summary judgment, given that Plaintiff could not establish that Koch knew of a serious medical condition at the time he denied medical attention. *Hampton I*, No. 08 C 2984 (Order of Jan. 25, 2010) (St. Eve, J.). The Court noted in its dismissal order that the injury did not heal properly such that Plaintiff needed reconstructive surgery. *Id.* at 2.

Cermak is a limited medical facility and is not equipped to perform the surgery. (R. 59 at ¶¶ 15-17.) According to Defendants, once an inmate is placed on a wait list for surgery at Stroger, "the role of the Sheriff's Office is to transport the patient-inmate to their scheduled appointments," (R. 59 ¶ 22, citing Exh. J, Affidavit of Cook County Jail General Counsel Peter Kramer), and "neither Cermak nor the Cook County Sheriff's Office .. . . ha[s] control of the independent medical process employed by that outside facility." (R. 59 at ¶ 20, citing Exhs. D, Aff. of Dr. Hart.) Plaintiff never personally interacted with either Sheriff Tom Dart or Dr. Avery Hart. (*Id.* at ¶ 31; R. 69 at ¶ 31.)

Plaintiff agrees that, on February 4, 2008, he chose to have reconstructive surgery to his Achilles tendon, that Cermak does not perform that procedure, and that he was placed on a wait list for the surgery. (R. 69 at ¶¶ 14-15.) He adds, however, that, although Cermak does not perform such procedures, Cermak must make the inmate available for visits to Stroger, and that Plaintiff missed visits due to Cermak reporting him as "lost." (R. 69 at ¶¶ 16, 18.) In support, Plaintiff cites to (1) a Cermak Consultation Request Form from January 2, 2009, which states, "no appointment scheduled. Pt. lost to F/U. Still c/o (L) Achilles pain." (R. 69, Exh. E(a)), and (2) a Stroger physician's report from May 4, 2009, which noted a two-year delay for surgery and stated that Plaintiff "had reportedly been lost to follow up per his note from the jail." (R. 69, Exh. F(d).) The report also states that "there was a period of time when allograft[2] was not available." (*Id.*)

On June 23, 2010, Plaintiff received his surgery, which was three years following his injury and approximately two and one-half years following the time he was put on the surgical wait list in February 2008. (R. 59, ¶ 32; R. 69 at ¶ 18.)

---

[2] Although not explained by the report, an allograft is a tissue graft.

6

Without delving into a discussion of each grievance and medical report in the record, the Court notes that Plaintiff filed grievances on September 25, 2007, January 23, 2008, March 6, 2008, July 28, 2008, October 31, 2008, June 21, 2009, and November 6, 2009. (R. 69, Exhs. A(e).) Each grievance after February 2008 requested that Plaintiff receive surgery – some complained of pain and difficulties with walking (R. 69, Exh. A(e) pp. 1, 7, 14), while others complained that he was unable to protect himself from other inmates because of his ruptured tendon. (*Id.* at pp. 3, 9.) Each grievance was referred to medical personnel, who responded that Plaintiff was on the wait list at Stroger and that Cermak had no control over that list. (R. 69, Exh. A(e).) Progress Notes from Cermak relating to Plaintiff's Achilles tendon are from June 20, 2007, August 6, 2007, September 5, 2007, December 17, 2007, January 30, 2008, July 27, 2008, January 2, 2009, July 23, 2009, July 26-27, 2009, and April 10, 2010. (R. 69, Exhs. C, D, and E.) The Progress Notes after February 4, 2008, indicate that Plaintiff complained about his Achilles tendon and that he was on the wait list for surgery at Stroger. (R. 69, Exhs. D(e)-(g).) Reports from Stroger Hospital are from February 4, 2008, May 4, 2009, September 15, 2009, April 1, 2010, April 29, 2010, and June 23, 2010 (surgical report). (R. 69, Exhs. F(a)-(j).)

**ANALYSIS**

Plaintiff seeks damages for the delay of surgery to his ruptured Achilles tendon. His injury occurred on June 19, 2007, and on February 4, 2008, he was placed on a wait list for reconstruction surgery, which was performed on June 23, 2010. Plaintiff names Sheriff Tom Dart and Director of Cermak Health Services Dr. Avery Hart in both their individual and official capacities. (R. 9, Amended Compl. at 6.) Defendants contend that: (1) neither of them were personally involved with Plaintiff's medical care or securing surgery for him and thus cannot be held liable in their

individual capacities, and (2) neither Cermak nor the jail controlled the wait list at Stroger Hospital, such that Plaintiff cannot maintain a claim against them in their official capacities.

As a pretrial detainee, Plaintiff's claims are governed by the Fourteenth Amendment, as opposed to the Eighth Amendment, which applies to similar claims by prisoners. *Minix v. Canarecci*, 597 F.3d 824, 830-31 (7th Cir. 2010). Although different constitutional provisions govern the claims of pretrial detainees and prisoners, detainees are afforded at least the same protections as convicted prisoners, and courts thus apply the same analysis for both types of cases. *Id.* Prison and jail officials are constitutionally required to take reasonable measures to ensure that inmates receive adequate medical care. *Id.* (citing *Farmer v. Brennan*, 511 U.S. 825, 832 (1994)).

For claims against Defendants in their individual capacities, Plaintiff must be able to prove that they acted with deliberate indifference to his serious medical needs. *Williams v. Liefer*, 491 F.3d 710, 714 (7th Cir. 2007). Such a claim involves two elements: (1) an objectively serious medical condition, and (2) deliberate indifference to that condition, i.e., that Defendants were actually aware of Plaintiff's serious medical condition, but did not take reasonable steps to address it. *Id.* To establish a claim against Defendants in their official capacities, Plaintiff must be able to show that he suffered a constitutional injury as the result of an express policy or custom of the governmental entity for which the official is an agent. *Gayton v. McCoy,* 593 F.3d 610, 622 (7th Cir. 2010).

Defendants do not argue that Plaintiff's ruptured Achilles tendon was not an objectively serious medical condition. (*See* R. 61, Memorandum in Support of Summary Judgment at 5-9.)[3]

---

[3] An objectively serious medical condition "need not be life-threatening . . .; rather, it could be a condition that would result in further significant injury or unnecessary and wanton infliction of pain if not treated." *Gayton v. McCoy*, 593 F.3d 610, 620 (7th Cir. 2010). Courts
(continued...)

Nor do Defendants argue that a two and one-half year (from the date Plaintiff was on the wait list) to three year (from date he sustained his injury) delay for surgery could not constitute deliberate indifference.[4] (*Id.*) Rather, Defendants contend that (1) Plaintiff cannot establish individual liability against them because they were not personally involved with either treating Plaintiff or ensuring that he receive surgery, and (2) they cannot be held liable in their official capacities because there was no custom or policy by either the jail or Cermak that caused the delay and neither entity had control over Stroger Hospital's wait list. (R. 61 at 6-9.) Defendants are correct with respect to the claims against them in their individual capacities. With respect to the claims against them in their official capacities, however, this Court cannot grant summary judgment based upon the current record.

---

[3](...continued)
that have considered a condition similar to Plaintiff's have usually found that it satisfies the objectively serious prong. *See Turner v. Kirsch*, No. 08-2005, 2011 WL 1430300, *5 (E.D. Pa. 2011) (Goldberg, J.) (a torn Achilles tendon requiring treatment and two surgeries considered a serious medical condition); *see also Hemmings v. Gorczyk*, 134 F.3d 104, 109 (2d Cir. 1998); *Allen v. Feinerman*, No. 07 CV 805, 2009 WL 90118, *1 (S.D. Ill. Jan. 14, 2009) (Reagan, J.) (both cases holding that allegations of a ruptured Achilles tendon were sufficient to state a serious medical need).

[4] A significant delay in effective medical treatment may support a claim of deliberate indifference. *See Grieveson v. Anderson*, 538 F.3d 763, 779 (7th Cir. 2008). Although Dr. Hart characterized the surgery as "elective," (R. 59, Exh. ¶¶ 7, 9), a term not used in the Stroger Hospital reports (R. 69, Exhs. B-1(b) and (c), F(d)), a significant delay even for an elective surgery can establish deliberate indifference. *See Baker v. Wilkinson*, 635 F. Supp. 2d 514, 520-21 (W.D. La. July 2, 2009) (four year delay for surgery to remedy bleeding hemorrhoids constituted deliberate indifference); *West v. Keve*, 541 F. Supp. 534, 540 (D. Del. 1982) (seventeen month delay between recommendation and performance of elective surgery for varicose veins constituted deliberate indifference); *but see Forstner v. Daley* 62 Fed. Appx. 704, 706, 2003 WL 1827217, *2 (7th Cir. 2003) (unpublished) (delay of 26 months for a knee joint injury caused mainly by transfer of inmate and scheduling of appointments was not deliberate indifference); *Price v. Carey*, No. 91-6643, 1992 WL 34208, *4 (4th Cir. Feb. 26, 1992) (eight month delay for hernia surgery did not rise to level of deliberate indifference).

9

The evidence indicates that neither Sheriff Tom Dart nor Cermak Health Services Director Dr. Avery Hart were personally involved such that they face liability in their individual capacities. Section 1983 does not allow strict liability under the doctrine of *respondeat superior*, under which a supervisory official can be held liable for the torts of subordinates. *Palmer v. Marion County*, 327 F.3d 588, 594 (7th Cir. 2003); *Zimmerman v. Tribble*, 226 F.3d 568, 574 (7th Cir. 2000), Section 1983 suits against persons in their individual capacities require personal involvement. *Palmer*, 327 F.3d at 594; *Higgins v. Corr. Med. Serv. of Ill., Inc.*, 178 F.3d 508, 510 (7th Cir. 1999); *Hudson v. McHugh*, 148 F.3d 859, 864 (7th Cir. 1998).

Plaintiff acknowledges that he never met with, spoke to, or informed either Sheriff Dart or Dr. Hart about his condition or the delay with getting surgery. (R. 59 at ¶ 31; R. 69 ¶ 31.) Indeed, Plaintiff stated in his deposition that he had no personal interaction with either Defendant. (R. 59, Exh. A, Pl.'s Depo. at 67.) Furthermore, Plaintiff's grievances about his condition and his inability to obtain surgery were neither directed to nor reviewed by either Defendant. (R. 69, Exhs. A(e).) Plaintiff even states in his response to Defendants' Rule 56.1 Statement that his claims against Defendants do not involve their personal involvement. (R. 69 at ¶ 31) ("Plaintiff contends that, although he hasn't had interaction with Tom Dart or Avery Hart, for 3 to 4 years, personnel under their supervis[ion] have cause Plaintiff to lose his usage of his toe.") Although Physician's Assistant Kevin Sims saw Plaintiff or reviewed his medical records on several occasions, (*see* R. 69, Exhs. C and D (the Progress Notes show only one reference to Dr. Hart being consulted, following the 7/27/09 visit, *see* Exh. D(e)), and although Plaintiff's grievances requesting surgery were reviewed by Counselor V. Butler (R. 69, Exh. A(e),) Plaintiff does not name these persons as Defendants. Rather, this Court must examine the claims against Tom Dart and Dr. Hart, neither of

whom had personal involvement with getting Plaintiff scheduled for surgery. Accordingly, because Plaintiff cannot establish claims against Defendants in their individual capacities, the Court dismisses these claims.

With respect to Plaintiff's claims against Defendants in their official capacities, such claims are treated as claims against the governmental entities for which they are agents. *Walker v. Sheahan*,526 F.3d 973, 977 (7th Cir. 2008) (citing *Hafer v. Melo*, 502 U.S. 21, 25 (1991)). For Cermak Director Dr. Avery Hart, an official-capacity claim against him is considered to be a claim against Cook County. *Aleman v. Dart*, No. 09 C 4069, 2010 WL 4876720, *7 (N.D. Ill. Nov. 23, 2010) (Dow, J.) (a claim against Dr. Avery Hart in his official capacity is considered a claim against Cook County); *Jackson v. Sheriff of Cook County*, No. 06 C 493, 2007 WL 917388, *14 (N.D. Ill. March 23, 2007) (Coar, J.) (same); *see also Glass v. Fairman*, 992 F. Supp. 1040, 1043 (N.D. Ill. 1998) (same). For Sheriff Tom Dart, as an elected official with decision-making authority over the jail that is independent of Cook County, an official capacity claim against him is considered to be one against the Sheriff's Office. *See DeGenova v. Sheriff of DuPage County*, 209 F.3d 973 (7th Cir. 2000); *see also Aleman*, No. 09 C 4069, 2010 WL 4876720 *7; *Jackson*, No. 06 C 493, 2007 WL 917388 *14 (citing *Moy v. County of Cook*, 159 Ill.2d 519, 640 N.E.2d 926, 929 (Ill. 1994)); *Nyberg v. Puisis*, No. 93 C 6602, 1995 WL 571588, *3 (N.D. Ill. Sept. 22, 1995) (Plunkett, J.) (explaining that an official capacity claim against a Cermak official is one against Cook County, while an official capacity claim against the Cook County Jail must name its sheriff as Defendant). Although not specifically named as a Defendant, Stroger Hospital is the county hospital for Cook County, and an official capacity claim involving its procedures would be

considered a claim against Cook County. *Doggett v. County of Cook*, No. 05 C 2495, 2006 WL 3196879, *5 (N.D. Ill. Nov. 3, 2006) (St. Eve, J.); *see also Glass*, 992 F. Supp. at 1043.

A governmental entity is not liable under § 1983 unless its own policy or custom caused the deprivation of constitutional rights. *Walker v. Sheahan*, 526 F.3d 973, 977 (7th Cir. 2008) (citing *Monell v. Department of Social Services of New York City*, 436 U.S. 658, 694 (1978)). A local governmental unit's unconstitutional policy or custom can be shown by: (1) an express policy causing the loss when enforced; (2) a widespread practice constituting a "custom or usage" causing the loss; or (3) a decision by a person with final policymaking authority. *Chortek v. City of Milwaukee*, 356 F.3d 740, 748 (7th Cir. 2004).

In the present case, Defendants contend that Plaintiff cannot demonstrate a custom or policy by either Cermak or the Sheriff's Office that caused the delay with surgery. According to Defendant Dart: "When Cermak Health Services ("Cermak") is requesting a surgery at an institution outside Cermak, the role of the Sheriff's Office is transporting the inmate to the outside medical facility." (R. 59, Exh. J at ¶ 2, Affidavit of Peter Kramer, a representative of the Cook County Sheriff's Office.) "The Sheriff's Office has no role other than transportation in the scheduling of appointments at outside medical facilities." (*Id.* at ¶ 3.) According to Defendant Hart: "When an inmate opts for elective surgery at an outside facility such as John Stroger Hospital, Cermak has no control of the independent medical process employed by that outside facility, including the use of a wait list for surgery or any financial considerations." (R. 59, Exh. D at ¶ 9.) Defendants reason that they – or, rather, their entities, Cermak and the Sheriff's Office – cannot be held liable because the scheduling of Plaintiff's surgery was controlled by a separate entity, Stroger

Hospital. (*See* R. 71, Defs.' Memorandum of Law, p. 6-8.) This reasoning is flawed for several reasons.

First, Cermak and Stroger Hospital are both divisions within the Cook County Health and Hospitals System ("CCHHS"). *See Boyce v. Moore*, 314 F.3d 884, 887 n.1 (7th Cir. 2002) ("Cermak is a separate entity from [Cook County Department of Corrections] and [is] an extension of Cook County Hospital"); *Thompson v. County of Cook*, 428 F. Supp. 2d 807, 810 (N.D. Ill. 2006) (Stroger Hospital is managed by the Cook County Bureau of Health Services, the same administrative agency that manages Cermak Health Services). Although the Sheriff's Office may "relegate to the prison's medical staff the provision of good medical care," *see Burks v. Raemisch*, 555 F.3d 592, 595 (7th Cir. 2009), such a delegation of responsibility does not exist for divisions of the same agency. Dr. Hart cannot defeat an official capacity claim by demonstrating that the responsibility with scheduling a date for Plaintiff's surgery laid not with Cermak, but with Stroger Hospital.

Second, even if the division of responsibilities allowed the Sheriff's Office to delegate to Cermak the medical care of inmates, and allowed Cermak to delegate to Stroger Hospital the performing and scheduling of medical procedures that could not be performed at Cermak, such delegations do not excuse Defendants' duties to ensure that the medical needs of inmates are adequately met. A division of labor "must ensure that [jail] officials fulfill their responsibility to provide constitutionally adequate care to each individual inmate with reference to his particularized medical need." *Roe v. Elyea,* 631 F.3d 843, 860 (7th Cir. 2011). "With respect to an individual case, . . . [jail] officials still must make a determination that application of the protocols result in adequate medical care." *Id; see also Johnson v. Bowers*, 884 F.2d 1053, 1056-57 (8th Cir. 1989)

13

(an outside facility's delay with scheduling a surgery does not excuse a prison from its duty to ensure adequate medical care for an inmate). "The responsibility for securing medical care for prisoner's needs rests with the prison authorities, not with some outside medical facility." *Johnson*, 884 F.2d at 1056-57.

In this case, Plaintiff's grievances from 1/31/08, 3/6/08, 7/28/08, 10/31/08, 6/21/09, and 11/6/09, all requesting surgery, were referred to Cermak and received essentially the same response – that Plaintiff was on the wait list at Stroger and Cermak had no control over the wait list. (R. 69, Exhs. A(e) at p.3-16.) Similarly, Cermak Progress Notes from 1/2/09, 7/27/09, and 5/19/10 reveal that Plaintiff requested surgery and that he was told that he was on a wait list. (*Id.* at Exhs. D(e), D(g), and E(a).) After the February 4, 2008, examination at Stroger, Plaintiff did not return until May of 2009. (R. 69, Exh. F(d).) The record indicates that Plaintiff had only two to three visits to Stroger between the time he was placed on the wait list until the time of his June 23, 2010, surgery. (*Id.* at Exhs. F(d)-(h).)

This evidence, along with the affidavits of Dr. Hart and Peter Kramer discussed above, raise a dispute as to a material fact as to the existence of a policy, or at least a custom, that once Stroger placed an inmate on a wait list for surgery, neither the jail nor Cermak officials did anything to ensure that the surgery occurred. Where "no established checks-and-balances system [exists] to make sure that patients who suffer . . . a significant medical [condition] do not fall through the cracks," an inmate may be able to establish an unconstitutional custom or policy. *Davis v. Carter*, 452 F.3d 686, 692 (7th Cir. 2006) (official capacity claim allowed for delays with receiving methadone treatment). There is no indication that Cermak or jail officials checked with Stroger to ensure that the scheduling of his surgery had not "fall[en] through the cracks." *Id.*

14

A disputed issue of material fact thus exists as to whether the Sheriff's Office and Cook County, through Cermak, had a custom or policy of taking inadequate action to address Plaintiff's need for surgery once he was placed on the wait list at Stroger Hospital. Accordingly, this Court must deny the motion for summary judgment with respect to Plaintiff's official capacity claims based on the record before it.

## CONCLUSION

For the reasons stated in this opinion, Defendants' motion for summary judgment [58] is granted in part and denied in part. Plaintiff's claims against Defendants in their individual capacities are dismissed. Plaintiff may proceed with his claims against Defendants in their official capacities.

**DATE:** July 18, 2011

                                **ENTERED**

                                _____
                                **AMY J. ST. EVE**
                                **United States District Judge**